# Exhibit A

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                          SUPERIOR COURT
                                                     CIVIL ACTION NO.

| | |
|---|---|
| JOSEPH W. CIRILLO, As Personal ) <br> Administrator, of the Estate of ) <br> DIANE L. CIRILLO, Deceased ) <br> ) <br>                        ) <br>           Plaintiff,          ) | **COMPLAINT FOR DAMAGES AND** <br> **DEMAND FOR JURY TRIAL** |

JOSEPH W. CIRILLO, As Personal )
Administrator, of the Estate of )
DIANE L. CIRILLO, Deceased )
)
)
            Plaintiff,          )    COMPLAINT FOR DAMAGES AND
                               )    DEMAND FOR JURY TRIAL
v.                             )
                               )
BAYER AG,                      )
BAYER HEALTHCARE               )
PHARMACEUTICALS, INC.          )
f/k/a Berlex, Inc.,            )
f/k/a Berlex Laboratories, Inc., and )
BAYER SCHERING PHARMA AG       )
f/k/a Schering AG              )
                               )
            Defendants.

NOW COMES , Joseph W. Cirillo, as the Personal Administrator, of the Estate of Diane L. Cirillo,

Deceased, by and through his counsel, Sheff Law Offices, Pogust, Braslow & Millrood, LLC and Janet,

Jenner & Suggs, LLC, and for his causes of action, sues the Defendants and alleges as follows::

### STATEMENT OF CASE

1.     Gadolinium is an injected substance used to help patients and doctors receive optimum results from

       Magnetic Resonance Imaging (MRI) tests.  It is a non-radioactive chemical that acts as a contrast

       agent, so when it is absorbed by the patient's unhealthy or damaged tissue, the affected areas show

       up as bright areas on the MRI scans, making it easier for doctors to diagnose the patient's medical

       condition.

2.    Patients with kidney insufficiency who receive gadolinium-based agents are at risk for developing a debilitating, and a potentially fatal disease known as Nephrogenic Systemic Fibrosis ("NSF"), also known as Nephrogenic Fibrosing Dermopathy ("NFD"). Patients with NSF/NFD develop thickening of the skin and connective tissues that severely inhibits their ability to move and may result in broken bones. Other organs are at risk of thickening as well. There is no consistently effective treatment for the condition of NSF/NFD.

3.    The Defendant manufacturers of Gadolinium were aware of the dangers associated with gadolinium before their contrast dye was introduced to the market. The manufacturers failed to warn the Plaintiff's Decedent, Diane Cirillo, or her physicians about this risk of gadolinium-based agents to people with pre-existing kidney damage. The Defendants knowingly and recklessly left the defective product on the market to be given to unsuspecting patients when safer alternatives were available. Because of the Plaintiff's Decedent's exposure to gadolinium-containing contrast agents, the Plaintiff's Decedent developed NSF, and has sustained permanent, disabling, and horrific injuries and ultimately succumbed to sepsis, as a result of her NSF condition, with an untimely death on April 28, 2007.

## THE PARTIES

4.    Plaintiff, Joseph W. Cirillo, as the Personal Administrator, of the Estate of Diane L. Cirillo, Deceased, appointed by the Register of Wills in the County of Plymouth, Commonwealth of Massachusetts, on October 21, 2008, (*See* Attached Exhibit "A"), is a United States citizen residing at 21 Tichnor Place, Scituate, Massachusetts.

*Defendants*

5.    Defendants Bayer Corporation and Bayer AG are incorporated in Indiana and have their headquarters at 100 Bayer Road, #4, Pittsburgh, Pennsylvania 15205.

6.    Defendant Bayer Healthcare Pharmaceuticals, Inc., f/k/a Berlex, Inc., f/k/a Berlex Laboratories, Inc., is incorporated in Delaware and has its principal place of business at 6 West Belt, Wayne, New Jersey. Defendant Bayer Healthcare Pharmaceuticals, Inc., is the U.S.-based pharmaceuticals unit of Bayer Healthcare LLC, and is a subsidiary of Bayer Corporation.

7.    Berlex, Inc., f/k/a Berlex Laboratories, Inc., and now known as Defendant Bayer Healthcare Pharmaceuticals, Inc., is the corporate entity responsible for submitting the NDA for Magnevist®, which was approved in 1988. Because Defendant Bayer Healthcare Pharmaceuticals, Inc. is a corporate successor to Berlex, Inc. and Berlex Laboratories, Inc., it is obligated for its predecessor's liabilities. Berlex, Inc., and Berlex Laboratories, Inc. were engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related industries the prescription drug Magnevist®.

3

8.   Defendant Bayer Schering Pharma AG, f/k/a Schering AG, located in Berlin, Germany, is the corporate entity responsible for designing and manufacturing Magnevist®. Defendant Bayer Schering Pharma AG, f/k/a Schering AG was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing and/or introducing into interstate commerce, either directly or indirectly through third parties or related industries the prescription drug Magnevist®.

9.   Magnevist® is an injectable paramagnetic contrast agent for magnetic resonance imaging and arteriography. It is a patented, proprietary formulation that contains the metal gadolinium which is highly toxic in its free state. Magnevist®, the chemical name of which is gadopentetate dimeglumine, was represented by Berlex to be safely and effectively indicated for intravenous administration to facilitate the visualization of cranial and spinal anatomy as well as tumors, lesions, and immediately adjacent areas. Magnevist® was further represented by Berlex to be superior to two of its competitors (Omniscan and Optimark) in its thermodynamic and conditional stability, its low volume of excess chelate, and its ability to prevent the release of gadolinium into the body.

10.  Berlex obtained FDA approval of its New Drug Application (App. No. 019596) for Magnevist® (gadopentetate dimeglumine) on June 2, 1988.

11.  In 2006, Bayer AG, which has its legal domicile in Berlin, completed its acquisition of Schering AG. Berlex was a U.S. affiliate of Schering AG. Bayer AG is a holding company that owns and operates Defendants Bayer Healthcare LLC and Bayer Healthcare Pharmaceuticals, Inc.

## VENUE

12.  Plaintiff and Plaintiff's Decedent are/were residents and citizens of Massachusetts.

4

13. Venue in this district is appropriate because all Defendants do business in this district, are subject to personal jurisdiction in this district, and Plaintiff's Decedent suffered injury and death as a result of Defendants' conduct in this district.

14. The Defendants now, and at all times mentioned in this Complaint, conducted business and solicited business in the Commonwealth of Massachusetts through the sale of the contrast agents identified in this Complaint.

15. The Defendants now, and at all times mentioned in this Complaint, conducted business in Massachusetts, through the sales of various healthcare products other than contrast solutions to hospitals, businesses, institutions, distributors, and individuals in this Commonwealth.

16. Upon information and belief, relevant facts exist in this case applicable to the laws of Massachusetts. Plaintiff reserves the right to pursue the applicable legal claims and remedies available to them under the appropriate choice of law, including but not limited to Section 2, Chapter 93A of the Massachusetts General Laws regarding unfair or deceptive acts.

## STATEMENT OF FACTS

**A.** *Case Specific Facts*

17. Plaintiff's Decedent, Diane L. Cirillo, was administered varying dosages of injected gadolinium-based contrast dye in conjunction with MRIs/MRAs at Massachusetts General Hospital, including but not limited to those performed on or about the following dates: February 10, 1999; February 17, 1999; March 4, 1999; March 20, 1999; March 28, 1999; May 4, 1999; January 25, 2000 and June 18, 2004.

5

18.  Plaintiff's Decedent had renal insufficiency before, during and after her gadolinium- based contrast dye injections.

19.  As a further direct and proximate cause of being administered gadolinium-based contrast dye and contracting NSF/NFD, Plaintiff's Decedent suffered injuries, including but not limited to the following:

    a.  Significant scarring and thickening of the skin on his legs, arms, hands and other parts of his body;

    b.  Swelling of affected parts of her body;

    c.  Itchiness, dryness and flaking of the skin over affected parts of her body;

    d.  Significant pain after walking;

    e.  Inability to stand for long periods of time;

    f.  Difficulty grasping and gripping objects; and

    g.  Severe pain in her feet, legs, and hips;  and

    h.  Impaired ability to work; and

    i.  Death

20.  The causal relationship between Plaintiff's Decedent's onset of NSF/NFD and its connection with gadolinium was confirmed by way of a New England Journal of Medicine Article, dated February 21, 2008 and entitled, *Case 6-2008: A 46-Year-Old Woman with Renal Failure and Stiffness of Joints and Skin* written about the Plaintiff's Decedent by her doctors Gadolinium was detected in all of the tissue samples that were analyzed as part of the autopsy.  The tissue samples also confirmed the previous diagnosis of NSF/NFD.

21. As a further direct and proximate cause of administration of gadolinium and developing NSF/NFD, the Plaintiff's Decedent suffered untold injuries, disfiguration, pain, suffering, mental anguish, a shortened life expectancy, and incurred a loss of wages, health care costs, and other damages.

22. As a further direct and proximate cause of administration of gadolinium and developing NSF/NFD, the Plaintiff's Decedent suffered and therefore claims a loss of life and enjoyment, including but not limited to compensation for the loss of Decedent's ability to enjoy any of the pleasures of life as a result of her injuries.

23. As a further direct and proximate cause of administration of gadolinium and developing NSF/NFD, the Plaintiff's Decedent suffered and therefore claims a loss of consortium, including but not limited to compensation for losses arising out of the marital relationship, including the company, society, cooperation, affection and aid of spouse.

24. As a further direct and proximate cause of Plaintiff's Decedent's administration of gadolinium and developing NSF/NFD, Plaintiff suffered expenses relating to funeral, burial, and other death related expenses.

25. On April 28, 2007, at the age of forty-eight, Plaintiff's Decedent died as a result of NSF and end stage renal disease.

**B.**   *General Facts*

26. At all times relevant hereto, Defendants knew or should have known about the significant risk of gadolinium-based contrast agents administered to patients with renal insufficiency, including but not limited to the risk of NSF/NFD in the skin and other body organs.

27. NSF/NFD has been reported in medical literature for at least the last decade.

7

28.   Prior to a decade ago, the group of symptoms now known as NSF/NFD had been variously described as scleromyxedema, scleroderma, or other connective tissue diseases.   Regardless of the name ascribed to it, however, it has always been the case that this clinical entity now known as NSF/NFD develops only in patients with renal insufficiency who have been given an injection of gadolinium-type contrast agent.

29.   NSF/NFD is predominantly characterized by discoloration, thickening, tightening, and swelling of the skin within days or weeks after receiving a gadolinium-based contrast injection. These fibrotic and edematous changes produce muscular weakness and inhibit flexion and extension of joints, resulting in contractures. NSF/NFD often progresses to painful inhibition of the ability to use the arms, legs, hands, feet, and other joints.   The skin changes that begin as darkened patches or plaques progress to a "woody" texture and are accompanied by burning, itching, or severe pain in the areas of involvement.   NSF/NFD also progresses to a fibrotic or scarring condition of other body organs such as the lungs, heart, liver, and musculature.   This scarring can inhibit the ability of body organs to function properly and may lead to death.   NSF/NFD is a progressive disease as to which there is no known cure.

30.   NSF/NFD has been reported thus far only in people whose kidney function was compromised at the time of injection with gadolinium containing contrast solution.

31.   NSF/NFD did not exist until gadolinium containing contrast solutions came into use for enhancing MRI and MRA scans.

32.   At all times relevant hereto, Defendants and/or their corporate predecessors knew or should have known about the significant health risk of their gadolinium-based magnetic resonance contrast media

8

being administered to patients with renal insufficiency, including but not limited to the risk of nephrogenic fibrosis in the skin and other body organs.

33. Defendants and/or their corporate predecessors consistently failed to warn consumers and/or their health care providers that NSF/NFD could result when their gadolinium-based magnetic resonance contrast media products were administered to patients with renal insufficiency.

34. During the years that Defendants and/or their corporate predecessors manufactured, marketed, and sold their respective gadolinium-based magnetic resonance contrast media products, there were numerous case reports, studies, assessments, papers, and other clinical data that have described and/or demonstrated NSF/NFD in connection with the use of certain gadolinium-based contrast agents, including Defendants' and/or their corporate predecessors' gadolinium-based magnetic resonance contrast media products. Despite this, Defendants and/or their corporate predecessors repeatedly failed to adequately revise their package inserts, Material Safety Data Sheets, and other product-related literature, and to conduct appropriate post-marketing communications in order to convey adequate warnings.

35. Defendants and/or their corporate predecessors repeatedly and consistently failed to advise consumers and/or their health care providers of the causal relationship between their gadolinium-based magnetic resonance contrast media and NSF/NFD in patients with renal insufficiency.

36. Defendants and/or their corporate predecessors failed to take prompt, reasonable, and effective measures to alert the appropriate members of the health care community and its patients, including but not limited to renal patients, nephrologists and other physicians, radiologists, administrators,

technicians, and hospital/radiology supply personnel, to the serious adverse health risks presented by administration of their gadolinium-based magnetic resonance contrast media.

**C.**   ***Federal Standards and Requirements***

37.   The Defendants, upon information and belief, have or may have failed to comply with all federal standards and requirements applicable to the sale of their contrast dye, including, but not limited to, one or more of the following violations:

      a.   The Defendants' contrast dye is adulterated pursuant to 21 U.S.C. § 351 because, among other things, it fails to meet established performance standards, and/or the methods, facilities, or controls used for its manufacture, packing, storage or installation are not in conformity with federal requirements. See 21 U.S.C. §351.

      b.   The Defendants' contrast dye is adulterated pursuant to 21 U.S.C. § 351 because, among other things, its strength differs from or its quality or purity falls below the standard set forth in the official compendium for the drug and such deviation is not plainly stated on its label.

      c.   The Defendants' contrast dye is misbranded pursuant to 21 U.S.C. §352 because, among other things, the labeling is false or misleading.

      d.   The Defendants' contrast dye is misbranded pursuant to 21 U.S.C. §352 because words, statements, or other information required by or under authority of chapter 21 U.S.C. § 352 are not prominently placed thereon with such conspicuousness and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

e. The Defendants' contrast dye is misbranded pursuant to 21 U.S.C. §352 because the labeling does not bear adequate directions for use, and/or the labeling does not bear adequate warnings against use in those pathological conditions or by children where its use may be dangerous to health or against unsafe dosage or methods or duration of administration or application, in such manner and form as is necessary for the protection of users.

f. The Defendants' contrast dye is misbranded pursuant to 21 U.S.C. §352 because it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof.

g. The Defendants' contrast dye does not contain adequate directions for use pursuant to 21 CFR § 201.5, because, among other reasons, of omission, in whole or in part, or incorrect specification of (a) statements of all conditions, purposes, or uses for which it is intended, including conditions, purposes, or uses for which it is prescribed, recommended or suggested in their oral, written, printed, or graphic advertising, and conditions, purposes, or uses for which the drug is commonly used, (b) quantity of dose, including usual quantities for each of the uses for which it is intended and usual quantities for persons of different ages and different physical conditions, (c) frequency of administration or application, (d) duration or administration or application, and/or (d) route or method of administration or application.

h. The Defendants violated 21 CFR § 201.56 because the labeling was not informative and accurate.

11

i.  The Defendants' contrast dye is misbranded pursuant to 21 CFR § 201.56 because the labeling was not updated as new information became available that caused the labeling to become inaccurate, false, or misleading.

j.  The Defendants violated 21 CFR § 201.57 by failing to provide information that is important to the safe and effective use of the drug including degree and rate of absorption, pathways of biotransformation, percentage of dosage as unchanged drug and metabolites, rate or half-time of elimination, concentration in body fluids associated with therapeutic and/or toxic effects, degree of binding to plasma proteins, and/or the degree of update by a particular organ.

k.  The Defendants violated 21 CFR § 201.57 because evidence was only available to support the safety and effectiveness of the drug in selected subgroups of the larger population with a disease, syndrome, or symptom and the labeling failed to describe the available evidence and state the limitations of usefulness of the drug.

l.  The Defendants violated 21 CFR § 201.57 because they failed to identify specific tests needed for selection or monitoring of patients who took the contrast dye.

m.  The Defendants violated 21 CFR § 201.57 because the safety considerations regarding the contrast dye is such that the drug should be reserved for certain situations, and the Defendants failed to state such information.

n.  The Defendants' contrast dye is mislabeled pursuant to 21 CFR § 201.57 because the labeling fails to describe serious adverse reactions and potential safety hazards, limitations in use imposed by them, and steps that should be taken if they occur.

12

o.   The Defendants' contrast dye is mislabeled pursuant to 21 CFR § 201.57 because the labeling was not revised to include a warning as soon as there was reasonable evidence of an association of a serious hazard with the drug.

p.   The Defendants violated 21 CFR § 201.57 because the labeling failed to list the adverse reactions that occur with the contrast dye and other drugs in the same pharmacologically active and chemically related class.

q.   The Defendants violated 21 CFR § 201.57 because the possibility that a patient could develop NSF/NFD is significantly more severe than the other reactions listed in the adverse reactions, and yet the Defendants failed to list the development of NSF/NFD before the other adverse reactions on the labeling of the contrast dye.

r.   The Defendants' contrast dye is mislabeled pursuant to 21 CFR § 201.57 because the labeling does not state the recommended usual dose, the usual dosage range, and, if appropriate, an upper limit beyond which safety and effectiveness has not been established.

s.   The Defendants' contrast dye violates 21 CFR § 210.1 because the process by which it is manufactured, processed, and/or held fails to meet the minimum current good manufacturing practice of methods to be used in, and the facilities and controls to be used for, the manufacture, packing, or holding of a drug to assure that it meets the requirements as to safety and have the identity and strength and meets the quality and purity characteristic that it is purported or is represented to possess.

13

t.   The Defendants' contrast dye violates 21 CFR § 210.122 because the labeling and packaging materials does not meet the appropriate specifications.

u.   The Defendants' contrast dye violates 21 CFR § 211.165 because the test methods employed by the Defendants are not accurate, sensitive, specific, and/or reproducible and/or such accuracy, sensitivity, specificity, and/or reproducibility of test methods have not been properly established and documented.

v.   The Defendants' contrast dye violates 21 CFR § 211.165 in that the contrast dye fails to meet established standards or specifications and any other relevant quality control criteria.

w.   The Defendants' contrast dye violates 21 CFR § 211.198 because the written procedures describing the handling of all written and oral complaints regarding the contrast dye were not followed.

x.   The Defendants' contrast dye violates 21 CFR § 310.303 in that the contrast dye is not safe and effective for its intended use.

y.   The Defendants violated 21 CFR § 310.303 because the Defendants failed to establish and maintain records and make reports related to clinical experience or other data or information necessary to make or facilitate a determination of whether there are or may be grounds for suspending or withdrawing approval of the application to the FDA.

z.   The Defendants violated 21 CFR §§310.305 and 314.80 by failing to report adverse events associated with the contrast dye as soon as possible or at least within 15 days of the initial receipt by the Defendants of the adverse drug experience.

14

aa. The Defendants violated 21 CFR §§310.305 and 314.80 by failing to conduct an investigation of each adverse event associated with the contrast dye, and evaluating the cause of the adverse event.

bb. The Defendants violated 21 CFR §§310.305 and 314.80 by failing to promptly investigate all serious, unexpected adverse drug experiences and submit follow-up reports within the prescribed 15 calendar days of receipt of new information or as requested by the FDA.

cc. The Defendants violated 21 CFR §§310.305 and 314.80 by failing to keep records of the unsuccessful steps taken to seek additional information regarding serious, unexpected adverse drug experiences.

dd. The Defendants violated 21 CFR §§310.305 and 314.80 by failing to identify the reports they submitted properly, such as by labeling them as "15-day Alert report," or "15-day Alert report follow-up."

ee. The Defendants violated 21 CFR § 312.32 because they failed to review all information relevant to the safety of the contrast dye or otherwise received by the Defendants from sources, foreign or domestic, including information derived from any clinical or epidemiological investigations, animal investigations, commercial marketing experience, reports in the scientific literature, and unpublished scientific papers, as well as reports from foreign regulatory authorities that have not already been previously reported to the agency by the sponsor.

ff.    The Defendants violated 21 CFR § 312.32 because they failed to notify the FDA in a written IND safety report of the adverse experiences associated with the use of the contrast dye that was serious and unexpected.

gg.   The Defendants violated 21 CFR § 314.80 by failing to report adverse drug experiences at quarterly intervals for three (3) years from the date of approval of the application, and then at annual intervals.

hh.   The Defendants violated 21 CFR § 314.80 by failing to provide periodic reports to the FDA containing (a) a narrative summary and analysis of the information in the report and an analysis of the 15-day Alert reports submitted during the reporting interval, (b) an Adverse Reaction Report for each adverse drug experience not already reported under the Post marketing 15-day Alert report, and/or (c) a history of actions taken since the last report because of adverse drug experiences (for example, labeling changes or studies initiated).

ii.    The Defendants violated 21 CFR § 314.80 by failing to submit a copy of the published article from scientific or medical journals along with one or more 15-day Alert reports based on information from the scientific literature.

**COUNT I**
**Breach of Implied Warranty-Merchantability**

38.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

39.    The Defendants placed Gadolinium-based contrast dye into the stream of commerce.

16

40. Plaintiff's Decedent was given Gadolinium-based contrast dye as prescribed by physicians in a manner that the manufacturing Defendants intended the dye to be used.

41. The Defendants placed Gadolinium-based contrast dye into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the product, and was therefore not merchantable and was unfit for its intended purpose.

42. Gadolinium was defective in design or formulation in that, when it left the hands of the manufacturing Defendants, the foreseeable risks exceeded the benefits associated with the design or formulation, and therefore violated provisions of the Massachusetts Uniform Commercial code, 2-314, 2-15, 2-316 and 2-318 and all other applicable sections.

43. Gadolinium was expected to and did reach Plaintiff's Decedent without substantial change in condition. Alternatively, the Gadolinium manufactured and/or supplied by the manufacturing Defendants was defective in design or formulation, in that when it left the hands of the manufacturing Defendants, it was unreasonably dangerous and more dangerous than an ordinary consumer would expect, and thus was unfit for its intended purpose and was not merchantable.

44. Gadolinium was defective due to inadequate warning and/or inadequate clinical trials, testing and study, and inadequate reporting regarding the results of such studies.

45. Gadolinium was defective due to inadequate post-marketing warning or instruction because, after the manufacturing Defendants knew or should have known of the risk of injury from their Gadolinium, they failed to provide adequate warnings to the medical community and patients, and continued to promote the products as safe and effective.

17

46.     Gadolinium, manufactured, distributed, tested, sold, marketed, advertised and represented defectively by the manufacturing Defendants, was a substantial factor in bringing about the injuries to the Plaintiff's Decedent.

47.     As the direct and proximate cause of the defective condition of the Gadolinium as manufactured and/or supplied by the manufacturing Defendants and the breaches of implied warranties, Plaintiff's Decedent suffered those injuries and damages as described with particularity, above.

WHEREFORE, Plaintiff Joseph W. Cirillo, as the Personal Administrator, of the Estate of Diane L. Cirillo, Deceased, prays for judgment against the Defendants for an amount to be determined at trial, including all compensatory and "consortium-like" damages under the M.G.L. Ch. 229, §1 et seq. ("Wrongful Death Act"), punitive and exemplary damages under the Wrongful Death Act, attorneys' fees, costs, pre- and post-judgment interest, and other relief this Court may find just and equitable.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES.**

**COUNT II**
**Breach of Implied Warranties-Merchantability and Fitness for a Particular Purpose**

**Failure to Warn**

48.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

49.     The Defendants manufactured their gadolinium based contrast dyes and placed them into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the product.

18

50.    The Defendants' gadolinium based contrast dyes were defective due to inadequate warning and/or inadequate clinical trials, *in vivo* and *in vitro* testing and study, and inadequate reporting regarding the results.

51.    The Defendants' gadolinium based contrast dyes were defective due to inadequate post-marketing warning or instruction because, after the Defendants knew or should have known of the risk of injury from their Gadolinium-based contrast dye, they failed to provide adequate warnings to the medical community and patients, and continued to promote the products as safe and effective.

52.    The defective warnings and labeling were substantial factors in bringing about the injuries to the Plaintiffs.

53.    As the direct and proximate cause of the defective condition of the Gadolinium-based contrast dye agent as manufactured and/or supplied by the Defendants, and specifically their failure to warn, and their negligence, carelessness, other wrongdoing and actions described herein, Plaintiff's Decedent suffered those injuries and damages as described with particularity, above.

WHEREFORE, Plaintiff Joseph W. Cirillo, as the Personal Administrator, of the Estate of Diane L. Cirillo, Deceased, prays for judgment against the Defendants for an amount to be determined at trial, including all compensatory and "consortium-like" damages under the Wrongful Death Act, punitive damages under the Wrongful Death Act, attorneys' fees, costs, pre- and post-judgment interest, and other relief this Court may find just and equitable.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES.**

19

## COUNT III
### Negligence

54.  Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in
the preceding paragraphs and further alleges as follows.

55.  The Defendants were under a duty to exercise reasonable care, and to comply with the existing
standards of care, in designing, manufacturing, testing, distributing, marketing, and selling of their
product, Magnevist®.

56.  Because gadolinium is highly toxic and inherently dangerous and ultrahazardous to humans,
Defendants had a duty to exercise the highest possible degree of care in the designing,
manufacturing, testing, distributing, marketing, and selling of their gadolinium based contrast dye
products, including the duty to assure that their products did not pose a significantly increased risk
of bodily harm and adverse events.

57.  In breach of those duties, Defendants failed to exercise the appropriate degree of care and vigilance
in the design, formulation, manufacture, sale, testing, quality control, quality assurance, labeling,
warning, marketing, and distribution of their gadolinium-containing contrast solutions.

58.  Despite the fact that Defendants knew or should have known that their gadolinium-containing
contrast solutions posed a serious risk of bodily harm to humans and were inherently dangerous and
ultrahazardous to humans and particularly to those with renal insufficiency, Defendants continued to
manufacture and market such products for administration to MRI and MRA patients with renal
insufficiency.

59.   Defendants knew or should have known that persons such as Plaintiff's Decedent would foreseeably suffer injury as a result of Defendants' failure to exercise the highest possible degree of care as described above.

60.   Had the Plaintiff's Decedent not received the Defendants' Gadolinium-based product, she would not have developed NSF/NFD, and would not have suffered those damages described with particularity, above.

61.   As a direct and proximate cause of Defendants' negligence and failure to comply with appropriate standards of care, Plaintiff's Decedent suffered serious physical injury resulting in death, damages and economic loss and Plaintiff will continue to suffer, and economic loss in the future.

WHEREFORE, Plaintiff Joseph W. Cirillo, as the Personal Administrator, of the Estate of Diane L. Cirillo, Deceased, prays for judgment against the Defendants for an amount to be determined at trial, including all compensatory and "consortium-like" damages under the Wrongful Death Act, punitive damages under the Wrongful Death Act, attorneys' fees, costs, pre- and post-judgment interest, and other relief this Court may find just and equitable.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES.**

<u>**COUNT IV**</u>
**Breach of Express Warranty**

62.   Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

63.   Defendants expressly warranted that their gadolinium-containing contrast solutions were a safe and effective paramagnetic contrast agent for magnetic resonance imaging.

21

64.    The gadolinium-containing contrast solutions manufactured and sold by Defendants did not conform to these express representations because one or more of them caused serious injury and death to the Plaintiff's Decedent when administered in recommended dosages.

65.    As a direct and proximate result of Defendants' breach of warranty, Plaintiff's Decedent suffered serious physical injury and death, damages and economic loss and Plaintiff will continue to suffer such  damages, and economic loss in the future.

WHEREFORE, Plaintiff, Individually, and as the Personal Administrator, of the Estate of Diane L. Cirillo, Deceased prays for judgment against the Defendants for an amount greater than Ten Million Dollars ($10,000,000) compensatory damages, Ten Million Dollars ($10,000,000) punitive damages, plus attorneys' fees, costs, pre- and post-judgment interest, and other relief this Court may find just and equitable.

## COUNT V
### Breach of Implied Warranty

66.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

67.    At the time Defendants designed, manufactured, marketed, sold, and distributed their gadolinium-containing contrast solutions, Defendants knew of the use for which those products were intended and impliedly warranted the products to be of merchantable quality, safe for such use, and fit for the ordinary purposes for which the products were used.

68.    Plaintiff's Decedent and her physicians reasonably relied upon the skill and judgment of Defendants as to whether Defendants' product was of merchantable quality and safe for its intended use and upon Defendants' implied warranty as to such matters.

22

69. Contrary to such implied warranty, Defendants' gadolinium-containing contrast solutions were not of merchantable quality or safe for the intended use because the products are unreasonably dangerous as described above.

70. Defendants' breached their implied warranty of merchantability because their gadolinium-containing contrast solutions because of design defect, manufacturing defect, and Defendants'. failure to warn users such as Plaintiff and his physicians of the latent dangers in the normal and intended use of the products.

71. As a direct and proximate result of Defendants' breach of warranty, Plaintiff's Decedent suffered serious physical injury resulting in death, damages, and economic loss and Plaintiff will continue to suffer damages and economic loss in the future.

WHEREFORE, Plaintiff Joseph W. Cirillo, as the Personal Administrator, of the Estate of Diane L. Cirillo, Deceased, prays for judgment against the Defendants for an amount to be determined at trial, including all compensatory and "consortium-like" damages under the Wrongful Death Act, punitive damages under the Wrongful Death Act, attorneys' fees, costs, pre- and post-judgment interest, and other relief this Court may find just and equitable.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES.**

## COUNT VI
### Fraud/Misrepresentation/Deceit

72.   Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in

the preceding paragraphs and further allege as follows.

73.   Defendants each knowingly and intentionally made material and false and misleading

representations to Plaintiff's Decedent, her physicians and to the public that gadolinium-containing

contrast solutions were safe for use and that Defendants' labeling, marketing and promotion fully

described all known risks of the product.

74.   Defendants' representations were in fact false and deceitful, as gadolinium-containing contrast

solutions are not safe for use and its labeling, marketing and promotion did not fully describe all

known risks of the product.

75.   Defendants had actual knowledge based upon studies, published reports and clinical experience that

their gadolinium-containing contrast solutions created an unreasonable risk of serious bodily injury

and death to consumers, or should have known such information.

76.   Defendants knowingly and intentionally omitted this information in their product labeling

marketing, and promotion and instead, labeled, promoted and marketed their product as safe for use

in order to avoid monetary losses and in order to sustain profits in its sales to consumers.

77.   When Defendants made these representations that their gadolinium-containing contrast solutions

were safe for use, they knowingly and intentionally concealed and withheld from Plaintiff's

Decedent, her physicians and the public the true facts that such solutions were not safe for use in

consumers with renal insufficiency.

78. Defendants had a duty to disclose to Plaintiff's Decedent, her physicians and the public that gadolinium-containing contrast solutions were not safe for use in patients with renal insufficiency in that they cause NSF/NFD because they had superior knowledge of these facts that were material to Plaintiff and his physicians' decision to use gadolinium-containing contrast solutions.

79. Plaintiff's Decedent and her physicians reasonably and justifiably relied on the Defendants' concealment of the true facts and reasonably and justifiably relied upon Defendants' representations to Plaintiff's Decedent and/or her health care providers that gadolinium-containing contrast solutions were safe for human consumption and/or use and that Defendants' labeling, marketing and promotion fully described all known risks of the product.

80. Had Plaintiff's Decedent and her physicians known of Defendants' concealment of the true facts that gadolinium-containing contrast solutions were not safe for human use, Plaintiff's Decedent would not have been administered gadolinium-containing contrast solutions, and would not have developed NSF/NFD, or suffered those injuries as described with particularity, herein.

81. As a direct and proximate result of Defendants' misrepresentations and concealment, which was known to the Defendants, and upon which they intended him to rely, and upon which he did rely, Plaintiff's Decedent was administered gadolinium-containing contrast solutions and Plaintiffs have suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

WHEREFORE, Plaintiff Joseph W. Cirillo, as the Personal Administrator, of the Estate of Diane L. Cirillo, Deceased, prays for judgment against the Defendants for an amount to be determined at trial, including all compensatory and "consortium-like" damages under the Wrongful Death Act, punitive

damages under the Wrongful Death Act, attorneys' fees, costs, pre- and post-judgment interest, and other relief this Court may find just and equitable.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES.**

<u>COUNT VII</u>
**Wrongful Death (.M. G.L. Ch. 229, § 2)**

82.   Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

83.   Plaintiff Joseph Cirillo, as Administrator of the Estate of Diane Cirillo, Deceased, has the right bring this action under and by virtue of Massachusetts's Wrongful Death Statute,.M. G.L. Ch. 229, § 2 *et al.*, or in the alternative, any other applicable Wrongful Death Statute.

84.   That at all times hereinafter mentioned, the above described culpable conduct by Defendants was a direct and proximate cause of the death of Plaintiff's Decedent.

85.   As a result of her wrongful death, Plaintiff's Decedent has been prevented from performing all of her usual duties, occupations, recreational activities and avocation all to her and her beneficiaries' loss and detriment.

86.   As a direct and proximate result of the foregoing, Plaintiff's Decedent's beneficiaries have suffered for an indefinite period of time in the future, damages, injuries and losses, including but not limited to, a loss of financial support and her beneficiaries have been wrongfully deprived of contributions they would have received from Decedent, including monies which Decedent would have provided for such items as clothing, shelter, food, medical care and education.

87. That at all times hereinafter mentioned, as a further direct and proximate result of the above-described culpable conduct by Defendants and the death of Plaintiff's decedent resulting thereof, Plaintiff Joseph Cirillo as Administrator of the Decedent, has incurred funeral and burial expenses in an amount to be proven. Plaintiff's Decedent also suffered economic damages prior to death in the form of medical expenses for her use of gadolinium-containing contrast solutions and damage to her Administrator property.

88. Plaintiff makes claim, on behalf of Decedent's heirs-at-law and next-of-kin, for the loss of love, affection, services, earnings, support and all other damages recoverable under the Wrongful Death Statute, including punitive Wrongful Death, of the Commonwealth of Massachusetts.

WHEREFORE, Plaintiff Joseph W. Cirillo, as the Personal Administrator, of the Estate of Diane L. Cirillo, Deceased, prays for judgment against the Defendants for an amount to be determined at trial, including all compensatory and "consortium-like" damages under the Wrongful Death Act, punitive damages under the Wrongful Death Act, attorneys' fees, costs, pre- and post-judgment interest, and other relief this Court may find just and equitable.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES.**

## COUNT VIII
### Survival Action (M. G.L. Ch. 229, § 2)

89. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows

90.   Plaintiff, Joseph Cirillo, as Administrator of the Estate of Diane Cirillo, brings this action on his own behalf and on behalf of the Estate of Diane Cirillo under and by virtue of Massachusetts's Survivorship Statute, or in the alternative, under any other applicable Survivorship Statute.

91.   As a direct and proximate result of Defendants' conduct, Plaintiff's Decedent suffered and Defendants are liable for the following:

   a.   pain and suffering;

   b.   loss of earning and right to earn a living; and

   c.   other financial losses to Diane Cirillo as a result of her death.

92.   As a result of the foregoing, the Estate of Diane Cirillo is entitled to recover an amount equal to the gross amount Decedent would have earned between the date of her death and the end of her life expectancy, subject to her cost of maintenance, compensatory and punitive damages for her above-stated losses.

   WHEREFORE, Plaintiff Joseph W. Cirillo, as the Personal Administrator, of the Estate of Diane L. Cirillo, Deceased, prays for judgment against the Defendants for an amount to be determined at trial, including all compensatory and "consortium-like" damages under the Wrongful Death Act, punitive damages under the Wrongful Death Act, attorneys' fees, costs, pre- and post-judgment interest, and other relief this Court may find just and equitable.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES.**

## COUNT IX
### Loss of Consortium

93.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in

the preceding paragraphs and further allege as follows

94.     That at all times relevant hereto, Plaintiff's Decedent was the wife of Plaintiff Joseph W. Cirillo.

95.     As a direct and proximate result of the conduct of Defendants described herein, Plaintiff Joseph W.

Cirillo has been deprived of the comfort, society, aid, services, consortium, and support of her

husband, and has otherwise suffered loss.

WHEREFORE, Plaintiff Joseph W. Cirillo, as the Personal Administrator, of the Estate of

Diane L. Cirillo, Deceased, prays for judgment against the Defendants for an amount to be determined at

trial, including all compensatory and "consortium-like" damages under the Wrongful Death Act, punitive

damages under the Wrongful Death Act, attorneys' fees, costs, pre- and post-judgment interest, and other

relief this Court may find just and equitable.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES.**

## COUNT X
### Punitive Damages

96.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in

the preceding paragraphs and further allege as follows.

29

97.    Defendants' conduct was intentional, wanton, willful and/or outrageous, and was committed with gross negligence, reckless disregard of, and deliberate, callous and reckless indifference to Plaintiff's Decedent rights, interests, welfare and safety.

98.    Defendants knew or should have known that the conduct described herein would result in injuries or damages to Plaintiff's Decedent, and they proceeded with such conduct with malice and/or reckless disregard of the consequences.

99.    Defendants willfully and knowingly engaged in unfair and/or deceptive acts or practices, as described above, which subjects them to punitive damages.

100.    As a direct and proximate result of these breaches, Plaintiff's Decedent was exposed to Defendants' gadolinium based contrast dye products, thereby causing the injuries and death as described above.

101.    As a result of the foregoing, Plaintiff is entitled to an amount of punitive damages as determined by a jury and in the interests of justice.


WHEREFORE, Plaintiff Joseph W. Cirillo, as the Personal Administrator, of the Estate of Diane L. Cirillo, Deceased, prays for judgment against the Defendants for an amount to be determined at trial, including all compensatory and "consortium-like" damages under the Wrongful Death Act, punitive damages under the Wrongful Death Act, attorneys' fees, costs, pre- and post-judgment interest, and other relief this Court may find just and equitable.


**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES.**

Respectfully submitted,

**SHEFF LAW OFFICES**

_____

Donald R. Grady, Jr.
BBO No. 541841B
10 Tremont St.
Boston MA, 21208
Telephone: 617-227-7000
Fax: 617-227-8833
*Attorneys for Plaintiff*

<u>*OF COUNSEL:*</u>
**POGUST,BRASLOW, & MILLROOD, LLC**
Derek T. Braslow, Esq.
Tobias L. Millrood, Esq.
161 Washington St., Suite 1520
Conshohocken, PA 19428
Telephone: (610) 941-4204
Facsimile (610) 941-4245

**JANET, JENNER & SUGGS, LLC**
Robert K. Jenner
Brian Ketterer
1829 Reisterstown Road, Suite 320
Baltimore, Maryland 21208
Telephone: (410) 653-3200
Facsimile: (410) 653-6903